**Amy BURTNER, Plaintiff,**

v.

**Hiram COLLEGE, et al., Defendants.**

**No. 5:96–CV–1355.**

United States District Court,
N.D. Ohio,
Eastern Division.

June 26, 1998.

This court must now decide whether Hiram College should be held responsible for the professor's conduct. The defendant school argues it should not be liable for harassment which it did not know existed and which Burtner, if her allegations are true, failed to bring to Hiram's attention until she was awarded her diploma. Further, Hiram College argues it cannot be liable since it took prompt remedial action once it was notified of the harassment.

The Court acknowledges that the perspective from which the parties argue their motions and present evidence has changed since the parties filed their papers. Still, the Court finds the evidence they have adduced is sufficient for the Court to render judgment in the wake of the Supreme Court's recent decision in *Gebser v. Lago Vista Independent School District*, —— U.S. ——, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).

After examining the evidence, the Court finds that Plaintiff Burtner cannot satisfy either the *actual notice* or *deliberate indifference* standards which the Supreme Court now holds must be established to make an educational institution receiving federal funds under Title IX liable for sexual harassment of students. In granting the defendant's motion, the Court also declines to exercise pendent jurisdiction over the plaintiff's remaining state claims.

Nancy C. Schuster, Patricia Koch Windham, Schuster & Simmons, Cleveland, OH, for Plaintiff.

Thomas H. Barnard, Jr., Lawrence D. Pollack, Kimberly Brown Schroeder, Ulmer & Berne, Cleveland, OH, Barry R. Laine, Dennis Haines, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, Defendants.

*MEMORANDUM OPINION*

GWIN, District Judge.

On April 27, 1998 the Defendant Hiram College filed a motion for summary judgment in this sexual harassment lawsuit arising from a relationship between a student and professor at the Ohio liberal arts college [Doc. 106]. On May 27, 1998, after seeking leave of Court, Plaintiff Amy Burtner filed another motion for summary judgment [Docs. 109, 124].

I

Plaintiff Burtner filed this action against Defendants Hiram College and Professor Michael Emerson two years after graduating from the defendant school. In her amended complaint, the plaintiff alleges she had to endure *quid pro quo* sexual harassment in violation of Title IX (Count I); that she had to endure a sexually hostile educational environment in violation of Title IX (Count II); intentional infliction of emotional distress (Count III); tortious sexual harassment (Count IV); negligent hiring/retention (Count V); and breach of contract (Count VI).

Defendant Emerson was dismissed as a party in this suit when the Judge David Dowd granted him summary judgment on Count I and Count II, and dismissed without

prejudice the remaining state law counts against him. Plaintiff Burtner since filed suit in district court against Emerson.[1]

## II

Hiram is a small liberal arts college with about 850 full-time students. The school receives federal funding. Plaintiff Burtner was a student at Hiram from the fall of 1990 through June 1994. She graduated *magna cum laude* with a bachelor of arts degree in philosophy and English.

The parties dispute whether Hiram College ever had sufficient notice of Professor Emerson's alleged sexual harassment of the plaintiff. The parties also dispute whether Hiram College acted on whatever notice it received about the professor's alleged sexual harassment of students.

The record discloses the following facts and events which are relevant to whether the plaintiff can satisfy the *actual notice* and *deliberate indifference* standards of *Gebser:*

During the spring quarter of her sophomore year, Burtner enrolled in a required philosophy course Professor Michael Emerson taught. In May 1992, Emerson persuaded Burtner and her friend, "B," to attend a seminar at the Northwoods Field Station in the upper peninsula of Michigan.

Northwoods, located in the Hiawatha National Forest, is rustic and isolated with rudimentary plumbing, no electricity and outside latrines. During the course of this seminar, Emerson provided students with alcohol. Burtner alleges that during this summer program, Emerson began to sexually harass her. This harassment consisted of comments, innuendos, the singing of sexually suggestive songs, and some touching.

From the summer of 1992 until the summer of 1993, the relationship between Emerson and Burtner did not involve sex. During the fall of 1992, Emerson wrote Burtner four or five times while she was in Cambridge, England, and encouraged her to write back to him. Emerson spent time with Burtner and "B" on a trip to Paris in December 1992,

allegedly providing alcohol and making sexual advances toward the plaintiff.

In the summer of 1993, Burtner again attended Emerson's Northwood's program. During this program, the relationship became sexual. The relationship remained sexual until the winter quarter of 1994.

In Emerson's capacity as Burtner's faculty advisor, he insisted that she enroll in his courses, and was angry and upset with her when she considered courses others taught. Plaintiff says Emerson insisted on Burtner's presence in his office on a daily basis, and he would sometimes demand sex from Burtner in his Hiram office.

Throughout Burtner's time at Hiram, the defendant college had a sexual harassment policy contained in both the student and faculty handbooks. Pursuant to the sexual harassment policy, a student who believes he or she is being or has been harassed should report the matter to the college grievance officer (Kathryn Craig). Although Burtner knew Craig and once worked for her, Burtner never filed any grievance nor reported any sexual harassment to Hiram until she was leaving school.

In May or June of 1993, "M" (one of the three female students enrolled during the summer 1992 camp) approached Hiram's grievance officer with a written complaint about Professor Emerson's conduct during the 1992 summer camp. When that officer, Kathryn Craig, informed "M" that Hiram could not keep her complaint absolutely confidential, "M" chose not to file her written complaint until the following year. [see Doc. 120, exh. 7 at 376]

In that complaint M relates Emerson's attempts to talk M and her roommate into signing up for the camp, her estrangement from Emerson and the other students while at the camp, heavy alcohol consumption, and a series of events including public urination. She said that Professor Emerson tickled her on her thighs and on her chest "very near my breasts." She also accused Emerson of making suggestive comments.

---

1. *Burtner v. Emerson,* No. 98–CV–463. That case was filed in the United States District Court for

the Northern District of Ohio on Feb. 24, 1998.

She said Emerson witnessed, but did not intervene to stop, a naked male student jump on "M" while she was sitting on a couch. She said the boy

"jump[ed] on top of me naked for approximately two minutes while I proceeded to hide my face in my book and everyone else in the room laughed hysterically. I asked, no begged, Professor Emerson to please make [ name deleted] put his clothes on. Professor Emerson was sitting in the balcony of the main cabin and responded with smug laughter and then said, if you don't like it, tell him yourself, or else you can come up here with me. It was pitch dark up where he was sitting and the tone of his voice truly frightened me. I couldn't ask [name deleted] to put on his clothes because I knew he wouldn't and I was afraid to antagonize anyone any further."

Attached to this written complaint is an addendum dated June 26, 1994, in which M relates that she decided "after' thoughtful consideration, to come forward with my complaints against Michael Emerson." She said she had discussed her grievances against Emerson with Craig in the summer of 1993 "but fearing both a scandal and academic repercussions chose to wait until graduation to deal with the situation." [see Doc. 120, exh. 6]

Craig testified that she recalled "M"'s complaint against Emerson during the summer of 1993 as one involving grades or grading, though she admitted M "may have had a written grievance with her" during a meeting in the spring of 1993. Craig said in that deposition that she realized "M"'s complaint may have involved more than just grades after speaking with the Plaintiff Burtner and her friend a year later. [see Doc. 120, exh. 7, at pp. 376, 380]

In a sworn affidavit, Craig also testified that "[p]rior to June 1994, I had never received any complaints of any type regarding Professor Michael Emerson." [see Doc. 107, exh. A, at ¶ 7]

On June 8, 1994, after discussions with another professor regarding their situation, Burtner and "B" went to Hiram's grievance officer. On graduation day, June 10, 1994, Burtner and "B" filed a written grievance against Emerson. After several conversations with Craig, Burtner says she felt that the grievance officer was not supportive and not taking her grievance seriously.

Craig contacted "M" in June 1994 to ask whether she wished to file her grievance against Emerson since two other women had come forward. This grievance also was forwarded to Emerson for a response.

Hiram's policy permitted tenured faculty to be dismissed for sexual harassment. The result of the allegations of sexual harassment against Emerson was a letter in Emerson's personnel file which reflected that his conduct constituted sexual harassment in violation of school policy. Emerson also failed to receive a raise the next year.

On August 1, 1994, Craig presented Burtner with her findings and gave Burtner the option of accepting an informal resolution of the grievance (a settlement) or rejecting it and proceeding with a full hearing. Burtner chose to sign the letter which found that Emerson sexually harassed her. The letter warned Emerson that any further infractions would jeopardize his employment with the college. This concluded the matter as opposed to proceeding with a more formal hearing.

Plaintiff says Emerson remained unsupervised and uncounseled after "M"'s aborted complaint in May 1993, and for two academic years after Hiram reviewed Burtner's grievance. Dean Makosky suggested that Emerson seek other employment, which he did after the 1995–96 school year.

Since February 1996, Burtner has sought counseling on a weekly basis for treatment of her depression and anger.

## III

Both parties seek summary judgment. Pursuant to Rule 56, summary judgment shall be rendered if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in

the record in the light most favorable to the nonmoving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997).

However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 258–59 (6th Cir.1998).

### IV

The first two counts in Plaintiff Burtner's amended complaint charge the college with separate violations of Title IX. Count I makes out a *quid pro quo* sexual harassment claim and Count II makes out a sexually hostile educational environment claim.

Title IX provides in pertinent part that, "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Hiram College receives federal financial assistance.

The Supreme Court of the United States held in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), that Title IX also is enforceable by means of an implied private right of action. A school district can be held liable in damages under Title IX in cases involving a teacher's sexual harassment of a student. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Plaintiff's federal claims are grounded on this judicially-implied private right of action.

Between the time the parties filed their motions for summary judgment and this Court's ruling, the Supreme Court decided that theories of *respondeat superior* liability and constructive notice are not enough to hold schools liable for sexual discrimination under Title IX.

■ In *Gebser v. Lago Vista Independent School District*, — U.S. —, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), the Court held that an educational institution's liability will depend on a showing of *actual notice* and *deliberate indifference*. A damages remedy is not applicable under Title IX "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has *actual knowledge* of discrimination in the recipient's programs and fails adequately to respond." That response "must amount to *deliberate indifference* to discrimination." *Gebser v. Lago Vista Independent School District*, — U.S. —, —, 118 S.Ct. 1989, 1999 (emphasis added).

■ The majority opinion was explicit that *Gebser* did not "affect any right of recovery that an individual may have against a school district as a matter of state law or against the teacher in his individual capacity under state law or under 42 U.S.C. § 1983." *Id.* at 2000. The Court notes that the plaintiff has another suit pending against Professor Emerson in federal court.

As the facts above make clear, Plaintiff Burtner did not file her sexual harassment complaint against Professor Emerson until two days before her graduation from the Defendant Hiram College. *Gebser* said a damage recovery under Title IX was stopped "unless an official of the school district [has] at a minimum … authority to institute corrective measures on the district's behalf." *Id.* at 1992. The Court finds that Kathryn Craig, the director of career services and the grievance officer for the defendant during the 1993–94 school year, does meet the *Gebser* threshold.

Burtner has presented evidence that a female student identified only as "M" sought to file a grievance against Professor Emerson a year earlier in June 1993. The record evidence is not clear on whether Craig was told in specific detail which female students had been at Emerson's philosophy camp in Michigan. Plaintiff Burtner was one of five invited students during the summer of 1993. The two-week for-credit course was held at a rustic lodge called Northwoods. Professor

Emerson was the only faculty member present. Certainly the events related in "M"'s confidential report to Craig, whenever it was filed, would have put this official on notice of a serious sexual harassment situation.

However, Craig's affidavit says she first became aware of a sexual harassment complaint against Professor Emerson during June 1994 when the plaintiff and another female student first filed their complaint against Emerson. There is another reference in the record that "M"'s complaint chiefly concerned grades or grading. It is not clear whether Craig read "M"'s written complaint against Emerson in May or June 1993, or read those details tending to support sexual harassment sometime after receiving the plaintiff's grievance in the summer of 1994.

If notice to Craig can be considered actual notice for purposes of Title IX liability, the Court finds that Hiram College did not receive actual notice of Professor Emerson's sexual harassment until the plaintiff was graduating from Hiram College.

While the *Gebser* Court did not explain the actual notice standard, it is clear that the notice in that case was not enough to attach Title IX liability to the Texas school district. In that case, the high school student victim never reported the relationship to a school official. Several months before a police officer discovered the girl and her teacher in a sexual activity, the parents of two other students complained about the teacher's inappropriate comments in class. The principal met with the teacher, advised the teacher, spoke with the school guidance counselor, but never reported the parents' complaint to the school district superintendent. In *Gebser*, the school district lacked a formal anti-harassment policy and had not drafted an official grievance procedure for lodging complaints about sexual harassment. The teacher also lost his job and teaching license. However, the Supreme Court still held that the school district could not be held liable under Title IX because notice to officials at one school was insufficient to hold the district liable. *Id.* at 1992.

The filing-upon-graduation notice here gave the defendant school little or no time to correct the problem. It tends to demonstrate that the plaintiff cannot show that the defendant school also was deliberately indifferent to her situation. The evidence adduced by the parties shows, however, that the plaintiff's complaint was processed that summer. On August 1, 1994, before the plaintiff left for graduate school in New York, she and the other female student signed off on an informal grievance procedure. Emerson also signed off on the procedure which found that he had violated the school's sexual harassment policy.

Even if Plaintiff Burtner could establish actual notice in this case, she cannot show that Defendant Hiram College was deliberately indifferent to her situation after it received her complaint. The Court also notes that the defendant school district in the *Gebser* case was not found liable under Title IX even though it lacked a grievance policy. That case also involved a teacher's sexual activity with a young female, who was an eighth grader, a freshman and a sophomore during the relevant time period. In this suit, the complainant is a more mature college student and the defendant school did have a sexual harassment policy and grievance procedure.

The Court is convinced after a review of the record that Hiram College is entitled to summary judgment on plaintiff's two Title IX claims.

V

Plaintiff's amended complaint also includes claims for intentional infliction of emotional distress (Count III), tortious sexual harassment (Count IV), negligent hiring and retention (Count V), and breach of contract (Count VI). Since the Court disposes of all the federal claims alleged in the plaintiff's amended complaint, only state claims remain to be litigated.

The doctrine of pendent jurisdiction permits federal courts to entertain state claims which would otherwise lack subject matter jurisdiction so long as the state claim is "joined" with a related federal claim, the two claims arising out of the same event or connected series of events. *See United Mine*

*Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because pendent jurisdiction is associated principally with federal question jurisdiction, where the existence of a federal claim supports jurisdiction of a pendent state claim, disposition of the federal claim allows the district court to exercise its discretion to allow any unresolved state claims to be heard in the state courts. 28 U.S.C. § 1367.

The Court declines to exercise jurisdiction over the remaining state claims (Counts III, IV, V, and VI) and dismisses those claims without prejudice.

## VI

Therefore, the Court grants the defendant's motion for summary judgment on the Title IX claims on Counts I and II. The remaining state law claims (Counts III, IV, V, and VI) are dismissed without prejudice as the Court declines to exercise pendent jurisdiction when the federal questions no longer remain in the case.

The Court denies the plaintiff's motion for summary judgment.

The Court also denies as moot the defendant's first motion for summary judgment [Doc. 45]; denies as moot the plaintiff's motion for an extension of time within which to respond to the defendant's second motion for summary judgment [Doc. 115]; grants the plaintiff's motion for leave to file instanter memo in opposition to the defendant's second summary judgment motion [Doc. 120]; denies as moot the defendant's motion to extend time to serve a rebuttal expert report [Doc. 126]; denies the defendant's motion to strike the plaintiff's summary judgment motion and impose sanctions [Doc. 127]; denies as moot the defendant's motion to compel the plaintiff to submit to a psychological exam [Doc. 138]; denies the defendant's motion to continue the trial [Docs. 139]; and denies the defendant's motion for leave to file a supplemental memorandum [Docs. 140].

IT IS SO ORDERED.