Ginny GORDON by Sherry GORDON, her Mother and Next Friend, and Sherry Gordon, Individually, Plaintiffs,

v.

OTTUMWA COMMUNITY SCHOOL DISTRICT and Harold Francis Skinner, Defendants.

Civil No. 4–99–cv–30167.

United States District Court, S.D. Iowa, Central Division.

Aug. 23, 2000.

Michael P Mallaney, Steven H Shindler, Smith Schneider Stiles Hudson Serangeli Mallaney & Shindler PC, Des Moines, IA, for Ginny Gordon, Sherry Gordon.

Andrew J. Bracken, Ahlers Cooney Dorweiler Haynie Smith & Allbee, Des Moines, IA, for Ottumwa Community School District, Harold Francis.

## RULING ON DEFENDANT OTTUMWA COMMUNITY SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on the motion for summary judgment filed by defendant Ottumwa Community School District (# 21). Plaintiffs allege that in April 1997 Ginny Gordon, an elementary school student, was sexually abused by defendant Harold Skinner, an employee at Lincoln Elementary School in the Ottumwa Community School District (hereinafter "the District"). The Complaint states claims (1) against both defendants for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681–1688; (2) against both defendants under 42 U.S.C. § 1983 for violating Ginny Gordon's constitutional rights; (3) under state law against defendant Skinner for intentional infliction of emotional distress and battery; (4) against the District under state law for respondeat superior liability and negligent hiring, retention and supervision of Skinner; and (5) for loss of parental consortium against both defendants.

Defendant Skinner has been served but has not appeared or answered. Default has been entered and proceedings against him have been bifurcated for separate determination. Plaintiff and the defendant District have consented to proceed before a United States Magistrate Judge and the case was referred to the undersigned for all further proceedings on August 25, 1999. *See* 28 U.S.C. § 636(c).

The District's motion came on for hearing on June 28, 2000. Attorney Andrew Bracken appeared for the defendant. Attorney Andrew Howie appeared for plaintiffs. The matter is fully submitted.

I.

The motion for summary judgment is subject to the following well-established standards. A party is entitled to summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Helm Financial Corp. v. MNVA Railroad, Inc.,* 212 F.3d 1076, 1080 (8th Cir.2000)(citing Fed.R.Civ.P. 56(c)); *accord Bailey v. U.S. Postal Service,* 208 F.3d 652, 654 (8th Cir.2000). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Hartnagel,* 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999).

In assessing a motion for summary judgment a court must determine whether a fair-minded jury could reasonably return a verdict for the nonmoving party based on the evidence presented. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030 (8th Cir.2000). The court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *accord Lambert v. City of Dumas*, 187 F.3d 931, 934 (8th Cir.1999); *Kopp v. Samaritan Health System, Inc.*, 13 F.3d 264, 269 (8th Cir.1993). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue meriting a trial. *Gremmels v. Tandy Corp.*, 120 F.3d 103, 105 (8th Cir.1997) (citing *Grossman v. Dillard Dep't Stores, Inc.*, 47 F.3d 969, 971 (8th Cir.1995)); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). A conflict in the evidence ordinarily indicates a question of fact to be resolved by the jury. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983).

## II.

The following facts are either undisputed or represent the version favorable to plaintiffs. Ginny Gordon, now age 10, is the daughter of Sherry Gordon. They live in Ottumwa, Iowa. Ginny attended the District's Lincoln Elementary School in Ottumwa. The District is duly organized and existing under the laws of the state of Iowa, and it receives federal financial assistance for its public education program.

Defendant Harold Francis Skinner is a 72 year-old male. During the early to mid–1990's Skinner was a volunteer and later the volunteer coordinator at Lincoln. He volunteered hundreds of hours to the school. His grandchildren attended the school. He was well known and liked by students and staff who referred to him as "Grampa" or "Grampa Skinner."

Two incidents involving Skinner preceded his employment with the District. On Friday, September 29, 1995, a parent complained to the principal at Lincoln, Kevin Farmer, that after her daughter hugged Skinner, he kissed her on the lips, was slow to release her from his embrace, and patted her on the rear end. (Farmer Depo. at 22–23; [1] Def. Ex. 12).[2] Farmer initiated an investigation and called Skinner in for an interview that evening. (Farmer Depo. at 23; Def. Ex. 12). Skinner admitted he had been in the building to pick up his grandchild. While there a student approached him to give him a hug. Skinner denied making any facial contact or kissing the student, and asserted that any touching of the rear end, if it happened at all, was strictly an accident. (Farmer Depo. at 23; Def. Ex. 12). Farmer at that time told Skinner not to come into the school until further notice.

Farmer reported the results of his investigation to the parent on Monday, October 2, 1995. He met with the parent and explained what he found and told her she could call the police. Farmer initiated a conference call with the police and the parent so she could be advised of her options. The parent ultimately decided she would not file charges against Skinner. (Farmer Depo. at 23–24; Def. Ex. 11, 12).

Farmer did not think the student was credible and believed the complaint was unfounded. (Farmer Depo. at 48–49). Nonetheless, later on October 2, Farmer met with Skinner again, explained the District's expectation of how to return a hug

---

1. For the record, two depositions were taken of Farmer, one on April 26, 1998, in the criminal case against Skinner and one on December 6, 1999 in the present civil action. Excerpts from both depositions are included in Def. Ex. 2. All references to "Farmer Depo." are contained in Def. Ex. 2.

2. The complaint was initially made to a substitute principal, Bill Evans. Farmer returned to the school that afternoon and found Evans and a teacher talking with the parent and student. (Def.Ex. 12).

to a student (patting the student on the back with one hand) and told him it is never appropriate to make facial contact with a student. (Def. Ex. 11; Def. Ex. 13).

About a week after this incident a fifth or sixth grade student raised a concern about Skinner's conduct during a car ride home from a skating party. (Farmer Depo. at 24, 28). The student had just listened to a talk on inappropriate touching and was not sure if Skinner's conduct was appropriate. (*Id.*) The student explained to Farmer and a school counselor that she had been riding next to Skinner in a carload of students and that Skinner slapped the top of her thigh. (*Id.*) Farmer, the counselor, and the student discussed the incident and concluded that the touch was not something to be concerned about. (*Id.*)

In March of 1996, the District hired Skinner as a substitute crossing guard. (Def.Ex. 9). After he was hired, Skinner also worked from time to time as a substitute custodian and teacher's aide or associate. (Def. Ex. 1, ¶ 7; Farmer Depo. at 5–6).

A third incident of reported inappropriate conduct by Skinner occurred before the incident with Ginny Gordon. In late March or early April 1997 a substitute teacher reported that Skinner, while substituting as a teacher associate in the "Severe and Profound" room, had slapped a student who had a "severe communication disorder." (Pl.Ex. 6). The student could not communicate what had happened and had been exhibiting "extreme behavior." (*Id.*) Farmer inquired if the student's teacher or other classroom aides had seen Skinner slap the student. They had not. Skinner denied slapping the student. Farmer examined the child and saw no marks on his face. Farmer was not convinced the incident had taken place, in part because Skinner and the reporting substitute were competing for a position in the classroom, but instructed that Skinner was

not to substitute in that room again. (Farmer Depo. at 77–79; Pl.Ex. 6).

On or about April 15, 1997, while working as a substitute crossing guard, Skinner touched Ginny under her dress, on top of her underpants, in the vaginal area. (Def. Ex. 1 at ¶ 9; Def. Ex. 4 at 14–19). Skinner allegedly shortly afterward asked Ginny to raise her legs and spread them apart, and she said no. (Def. Ex. 4 at 19–21). On a prior occasion while Skinner was working as a substitute teacher's aide in Ginny's classroom, he allegedly took Ginny's hand and made her hand touch his groin area, on the outside of his clothes. (Def. Ex. 4 at 24–29; Def. Ex. 8 at Interrogatory No. 12).[3]

Ginny reported both of these incidents to her mother, Sherry Gordon, after school was dismissed on April 23, 1997. (Def. Ex. 3 at 12). Ms. Gordon then reported the allegations to the police and called Farmer on April 23. (Def. Ex. 1 at ¶ 10; Farmer Depo. at 6). The same day Farmer received the report from Ms. Gordon, Farmer reported the allegations of abuse to Superintendent Joe Scalzo, and they took steps to ensure that Skinner was not used as a substitute employee at the school until the allegation was cleared up. (Farmer Depo. at 10–11). Farmer also notified Skinner that the school could not use him as a substitute employee at the school until further notice, and advised Skinner to stay away from school premises. (*Id.*; Def. Ex. 6 at Interrogatory No. 6). Skinner did not work at the school after Farmer received the allegation of misconduct on April 23, 1997. (Def.Ex. 17). There was no contact between Ginny and Skinner after the school received Ms. Gordon's report.

Farmer initiated an investigation of the allegations on April 24, 1997, by interviewing Ginny and her sister, Ashley. (Farmer Depo. at 11–12, 32; Def. Ex. 8 at Interrogatory No. 2). Ginny repeated her allegations of inappropriate touching. (Farmer

---

**3.** Not all of the deposition pages cited in this paragraph are in the summary judgment record, but as defendant's factual statement containing the citations is not disputed and favorable to plaintiffs, the Court has taken these allegations as true.

Depo. at 14–15). During her interview, Ginny's sister told Farmer that Skinner had once hugged her, but that it was not in an inappropriate manner. (*Id.* at 15–16). Farmer interviewed Skinner on April 25, 1997. Skinner denied the allegations. (Def.Ex. 15). Nonetheless, Skinner resigned on April 25. (Farmer Depo. at 25; Def. Ex. 6 at Interrogatory No. 6; Def. Ex. 10). The District completed its investigation and cooperated with law enforcement. (Def. Ex. 6 at Interrogatory No. 6). On June 29, 1998 Skinner was convicted of two counts of indecent contact with a child, an aggravated misdemeanor in violation of Iowa Code § 709.12. (*State v. Skinner,* FECR004968, Judgment Entry (Iowa Dist. Ct. Wapello Co. June 29, 1998)).

Plaintiffs do not resist defendant's motion except as it relates to the Title IX claim and the state law negligent hiring, retention, and supervision claim. Therefore, plaintiffs' claims against the District under 42 U.S.C. § 1983 (Count II), respondeat superior (Count V), and loss of parental consortium (Count VII), as well as plaintiffs' claims for punitive damages against the District will be dismissed without further discussion.

### III.

The law provides a difficult hurdle for plaintiffs to overcome in this case. Title IX liability requires a showing of actual notice of, and deliberate indifference to, Skinner's misconduct, and state law insulates the District from tort liability in the performance of discretionary functions. Upon careful review of the summary judgment record the Court concludes the evidence is insufficient to support a finding in plaintiffs' favor on either of these remaining claims.

### A. *Title IX*

Title IX provides "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a). Title IX may be enforced by a private cause of action. *Cannon v. University of Chicago,* 441 U.S. 677, 709, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Sexual abuse or harassment of a student by a public school employee is actionable sex discrimination under Title IX for which monetary damages are available. *Franklin v. Gwinnett Cty. Pub. Schools,* 503 U.S. 60, 74–76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). *Franklin,* however, did not outline what a Title IX plaintiff must prove. That issue was addressed in *Gebser v. Lago Vista Ind. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). *Gebser* held damages may be recovered under Title IX upon a showing of actual notice to school officials of sexual abuse or harassment and deliberate indifference in responding to it. *Id.* at 290, 292–93, 118 S.Ct. 1989. More specifically, to hold the District liable for such conduct, plaintiffs must show (1) "a district official with the authority to address the complained-of conduct and take corrective action had actual notice" of the discriminatory conduct and (2) was deliberately indifferent to the conduct amounting to "an official decision not to remedy the violation." *Kinman v. Omaha Pub. Sch. Dist.,* 171 F.3d 607, 610 (8th Cir.1999) (citing *Gebser,* 524 U.S. at 290, 118 S.Ct. 1989).

"Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference...." *Doe v. Dallas Ind. School Dist.,* 153 F.3d 211, 219 (5th Cir. 1998)(same sex harassment case). In *Gebser,* the Court analogized the Title IX deliberate indifference standard to that pertaining to municipal liability under § 1983. 524 U.S. at 291, 118 S.Ct. 1989; *see Doe v. Gooden,* 214 F.3d 952, 955 (8th Cir.2000). In that context, the Supreme Court has said that "... 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 408, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citing *City of Can-*

ton v. Harris, 489 U.S. 378, 388–92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Essentially what is required in this case is sufficient evidence to conclude the District turned a "blind eye" to a known or obvious risk that Skinner would sexually abuse children. Kinman, 94 F.3d at 467.

The parties' briefs do not go head to head on the required elements. The defendant District's motion primarily challenges plaintiffs' evidence regarding deliberate indifference. Plaintiffs' resistance focuses on the notice element.

(i) Notice

■ Principal Farmer had the authority to address any misconduct by Skinner as shown by the investigations and actions taken by him in connection with the incident involving Ginny and those which preceded it. The significant facts for notice purposes are not those involving the abuse inflicted on Ginny. Ginny's report was immediately taken up and Skinner did not return to work after his abuse was disclosed. Rather, the question is whether, prior to the incidents involving Ginny, Farmer was "aware of facts that indicate[d] a likelihood of discrimination" by Skinner. Massey v. Akron City Bd. of Educ., 82 F.Supp.2d 735, 744 (N.D.Ohio 2000). It is difficult to define what kind of notice is sufficient, but this Court agrees with a recent decision in the District of Maine in which that court stated actual notice "requires more than a simple report of inappropriate conduct" on the part of a school employee but "the ... standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." Doe v. School Admin. Dist. No. 19, 66 F.Supp.2d 57, 63 (D.Me.1999). At some point between these poles a supervisory school official knows, or it should be obvious to him or her, that a school employee is a substantial risk to sexually abuse children.

Of the three prior alleged incidents involving Skinner, only one could provide the requisite notice. The allegation that Skinner slapped a seriously impaired student,

even if true, gave no notice of the likelihood that he would sexually abuse a student. See Gebser, 524 U.S. at 291, 118 S.Ct. 1989 (sexually inappropriate comments by a teacher during class were "plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student"). The information about the thigh slapping incident was equally consistent with innocent behavior. After talking with the student and a school counselor Farmer concluded that the touching was not a concern. Nothing in the summary judgment record impeaches the honesty or reasonableness of that conclusion.

The September 1995 allegation that Skinner hugged a female student, accompanied by kissing her on the lips and patting her rear end was an allegation of sexually inappropriate conduct. Returning a hug initiated by a student does not suggest that a school employee has a propensity toward sexual abuse. The length of the hug, the kiss and the patting were the concern and were disputed by Skinner. That these facts were serious enough to give Farmer notice of a likelihood that Skinner would sexually abuse another student is open to question. However, viewing the record favorably to plaintiffs, the Court concludes a reasonable fact finder could find from the specificity of the information, its source from the student and her mother, and the manner in which it was reported that the report had enough indicia of credibility to put the District on notice that Skinner presented a risk of sexually inappropriate conduct sufficient to require a response to the allegation.

(ii) Deliberate Indifference

■ Not every feeble response to a student's complaint of sexually inappropriate conduct by a teacher or school employee will insulate a school district from liability under Title IX. The Court must examine the "adequacy of the response," Kinman, 171 F.3d at 610, in light of the "seriousness and credibility of the complaint that puts

school officials on notice." *Doe*, 66 F.Supp.2d at 64. This analysis does not invite second guessing school officials through the application of hindsight. A lack of response must, in the circumstances, be inadequate to the point it amounts "to an official decision by the recipient [school district] not to remedy the violation", the "premise" of remedies available under Title IX. *Gebser*, 524 U.S. at 290, 118 S.Ct. 1989; *see Kinman*, 171 F.3d at 610.

On each occasion Farmer received a complaint about Skinner, he inquired further and, with respect to the September 1995 incident, took corrective action. The focus is on the September 1995 incident because, as noted previously, the other two did not give notice of discriminatory conduct. The credibility of the information was in dispute. Skinner denied kissing the student, or intentionally touching her rear end, the most disturbing features of the allegation. Moreover, although the allegations were clearly a cause for concern, they were much less serious than, and not necessarily suggestive of, the type of indecent contact with Ginny which resulted in Skinner's criminal conviction. The fact that Skinner was not a school employee at the time is another factor to weigh in assessing Farmer's response.

Farmer initiated an investigation as soon as the complaint came to his attention. He told Skinner not to come to the school until the matter was resolved. He talked to the student and to her mother. He assisted the mother in contacting the police to discuss the filing of charges. He spoke with Skinner about the allegations. From Farmer's interaction with Skinner as a school supporter and volunteer who donated many hours of time to the school, he found it difficult to believe that Skinner would harm a student (Farmer Depo. at 49; Def. Ex. 12). In the end Farmer made a determination about the credibility of the report and concluded the complaint was unfounded. (Farmer Depo. at 49).

Despite Skinner's denials and his own doubts about the incident, Farmer instructed Skinner on how to return a hug from a student and told him it was not appropriate for an adult to have facial contact with a student. The mother of the child told Farmer she did not think it was necessary for Skinner to be banned from school premises (Def.Ex. 11). Farmer told the mother that school officials would watch Skinner closely while he was in the building (*id.*), though it appears nothing specific was done to monitor Skinner's activities. (Pl. Statement of Facts; Farmer Depo. at 68–71).

In the Court's judgment, a reasonable fact finder could not conclude from this evidence that Farmer, and therefore the District, was deliberately indifferent to the allegations against Skinner. Farmer promptly and adequately investigated. He kept the parent fully informed. He took remedial action he thought appropriate. He did not turn a blind eye to the incident, nor can his response be fairly described as "an official decision not to remedy the violation". *Kinman*, 171 F.3d at 610.

In *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis Cty.*, 901 F.2d 642 (8th Cir.1990), a § 1983 deliberate indifference case, our circuit court was faced with a situation very similar to the present, except that the school district there perhaps had more notice of problem conduct. The case involved a school bus driver who transported, and was convicted of sexually abusing, five disabled children. Before his arrest, misconduct on the part of the bus driver (Cerny) had been reported to school officials on a number of occasions. The superintendent had received a report that Cerny had kissed a child on the bus. The district's director of transportation had the same information, and had been told Cerny used foul language on the bus. Two other supervisors received complaints that Cerny had used profanity, kissed a boy on the bus, and pushed one of the children down the bus steps. One of those supervisors had also received a complaint that Cerny had kissed and "kicked a child" and given

him a "snuggle." The district area coordinator received many of the same complaints and, in addition, had received a complaint that Cerny had put his hand down a boy's pants and had pulled a boy's pants down and spanked him. Shortly before Cerny's arrest, one of the children told the area coordinator that Cerny had been touching boys' crotches. *See* 901 F.2d at 644.

In affirming the district court's summary judgment ruling that the evidence was insufficient to show that the defendants "had notice of a pattern of unconstitutional acts and displayed deliberate indifference to or tacitly authorized the alleged unconstitutional conduct," *id.* at 645 (quoting *Jane Doe A v. Special School Dist. of St. Louis County*, 682 F.Supp. 451, 455 (E.D.Mo.1988)), the Eighth Circuit summarized its view of the case in terms which hold true here:

> That subsequent events proved [Cerny] to be a sexual reprobate ... should not result in after-the-fact imposition of the requirement of character-discerning omniscience on the part of the individual defendants or the District. Viewed in retrospect, some of Cerny's pre-arrest conduct portrays his true nature with a clarity that pre-arrest circumstances at the most only hinted at. If negligence could form the basis for a finding of liability, plaintiff's showing might have been adequate to take the case to a jury. Measured against the deliberate indifference-official policy standard of liability, however, plaintiffs have failed to establish a submissible case.

901 F.2d at 646–47. The evidence in this case is likewise insufficient to support a finding that the District was deliberately indifferent to the reports it received about Skinner's conduct.

**4.** A school district falls within the statutory definition of "municipality." Iowa Code § 670.1(2).

## B. *Negligent Hiring, Retention and Supervision*

In 1999 the Iowa Supreme Court expressly recognized a cause of action against an employer for negligent hiring, retention or supervision of an employee. *Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999). Plaintiffs must prove:

> (1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;
>
> (2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and
>
> (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Id.* at 708–09 (quoting 27 Am.Jur.2d *Employment Relationship* § 473 at 913–14 (1996)).

As a municipality,[4] the District can only be held liable in tort under the Iowa Municipal Tort Claims Act, Iowa Code Ch. 670.[5] *See Keystone Elec. Mfg. Co. v. City of Des Moines*, 586 N.W.2d 340, 345–46 (Iowa 1998); *Baker v. City of Ottumwa*, 560 N.W.2d 578, 582–83 (Iowa 1997). The District argues that hiring, retention and supervision of employees are discretionary functions for which it is immune from tort liability under Iowa Code § 670.4(3). That provision exempts municipalities from liability for:

> Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

The discretionary function exception in the Iowa Code is virtually identical to that

**5.** Chapter 670 is also referred to as the Iowa Tort Liability of Governmental Subdivisions Act. *Keystone Mfg.*, 586 N.W.2d at 345.

found in the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a). *Goodman v. City of Le Claire*, 587 N.W.2d 232, 236 (Iowa 1998). Because of the similarities between state and federal law on this and other immunity provisions, "federal decisions interpreting the federal immunity provision are persuasive authority in [the Iowa Supreme Court's] interpretation of the municipal immunity provision." *Id.* at 236. Specifically with respect to discretionary functions, the Iowa Supreme Court has adopted the two-step analysis set out by the United States Supreme Court in *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). *Goodman*, 587 N.W.2d at 238.

■ To establish application of the discretionary function exception, it must be shown (1) "the action is a matter of choice for the acting employee" and (2) "the judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 237 (quoting *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954). As to the second prong of this analysis, "the discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 539, 108 S.Ct. 1954. It does not apply where a statute, regulation or policy prescribes a mandatory course of action for the employee to follow. *Id.* at 536, 108 S.Ct. 1954; *see United States v. Gaubert*, 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)("if the employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy").

Hiring, retention and supervision of an employee are often spoken of in the same breath, but they are three different things. The parties do not appear to be in agreement on which are involved in plaintiffs' cause of action. The Complaint pleads only negligent supervision. Complaint ¶ 45. In their brief, plaintiffs state the case "deals with the negligent retention and supervision of an employee...." Plaintiffs' Brief at 6. Defendants categorize the action as one for negligent hiring

and supervision. Defendant's Brief at 9, 15. The Court will assume all three are presented, though since Skinner was not an employee or acting as a volunteer when two of the three prior instances of alleged misconduct occurred, and left employment immediately after the incidents involving Ginny, it would be difficult for plaintiffs to prevail on a theory of negligent retention.

■ The District argues its decisions with respect to the hiring, retention and supervision of Skinner satisfy the *Berkovitz/Goodman* two-step analysis so as to immunize it from liability. Plaintiffs respond that Iowa's mandatory child abuse reporting statutes deprived the District of the element of choice in dealing with Skinner, and as to the second element, the failure to act after notice of Skinner's misconduct did not involve a permissible exercise of policy judgment.

Whether to hire or retain an employee, as well as how to supervise him, are ordinarily matters of choice for a supervisor charged with these functions. The Iowa statutes pertaining to child abuse reporting on which plaintiffs rely do not prescribe a mandatory course of action which eliminates discretion in making these decisions in the case of school employees accused of abuse. Iowa Code § 280.17 requires the boards of directors of public and non-public schools to "prescribe procedures" following guidelines developed by state officials, for handling reports of child abuse committed by school employees or agents. It does not require any particular action be taken toward the employee. Iowa Code § 232.69(1)(b) identifies those persons, including "a licensed school employee" who are mandatory reporters of reasonably suspected child abuse. The obligation to report is mandatory, but, beyond investigation, the statute does not say what action is to be taken with respect to the report. Iowa administrative regulations require the investigation of reports of physical and sexual abuse of students at the hands of school employees, but it is for the investigator to determine, based on the preponderance of the evidence, whether it

is likely an incident of abuse occurred. Iowa Admin. Code § 281–102.8, .9.[6] The regulations do not specify what employment action. is to be taken, if any, with respect to the employee concerned. The District's policies[7] apparently require disciplinary action in the event of a finding of abuse against an employee, but do not specify what the disciplinary findings must be.

None of the statutes and regulations just described prescribed a course of action for Farmer to follow in making decisions about the hiring, retention, or supervision of Skinner in light of the information he had about him. · They do not say he could not be hired, must be fired, or give mandatory instructions for his supervision. It follows that the principal retained the ability to exercise judgment and discretion in these regards.

Concerning the second element of the discretionary function exception, whether the employee's judgment is the kind that the exception was designed to shield, the Eighth Circuit has opined generally that employment decisions which relate to the hiring, supervision and retention of employees are sufficiently related to policy judgments so as to fall within the exception. *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995) (an FTCA case). The *Tonelli* court identified the policy implications involved in hiring decisions as follows:

> The post office's choice between several potential employees involves the weighing of individual backgrounds, office diversity, experience and employer intuition. These multi-factored choices require the balancing of competing objectives, and are of the "nature and quality that Congress intended to shield from tort liability."

60 F.3d at 496 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)); *see Red Elk ·v. United States*, 62 F.3d 1102, 1107 (8th Cir.1995) (involving the rape of a child by a tribal police officer; "[t]he hiring and selection of an employee is a discretionary function" under the FTCA).

The District of Columbia Circuit in *Burkhart v. Washington Metro. Area Transit Authority*, 112 F.3d 1207 (D.C.Cir. 1997)[8] relied on *Tonelli* in holding that the hiring, training and supervision decisions of the Transit Authority were "susceptible to policy judgment." *Id.* at 1217. The Court found policy judgments involved in the supervision of employees because supervision "involved a complex balancing of budgetary ·considerations, employee privacy rights, and the need to ensure public safety." *Id.; see also Beebe v. Washington Metro. Area Transit Authority*, 129 F.3d 1283, 1287–88 (D.C.Cir.1997)(applying *Burkhart*); *Kirchmann v. United States*, 8 F.3d 1273, 1277 (8th Cir.1993) (holding that supervision of government contractors is a "discretionary function"); *Cooper v. United States*, 897 F.Supp. 325, 328 (W.D:Tex.1995), *aff'd*, 85 F.3d 624 (5th Cir.1996)(Table); *Taylor v. United States*, 668 F.Supp. 1302, 1304 (W.D.Mo.1987).

In *Larson v. Miller*, 76 F.3d 1446 (8th Cir.1996) (en banc) the Court considered a Nebraska discretionary function exception similar to Iowa's in the case of a school van driver who touched a nine year old special education student in the vaginal area. Some months prior to the incident in question the student had reported sexually inappropriate comments by the driver. *Id.* at 1451. The driver also had a prior arrest, but no conviction, for alleged sexual

---

**6.** It is unclear whether Skinner's work as a volunteer brought him within the scope of these regulations, which define "school employee" to include a volunteer "under the direction and control of" a public school board of directors. Iowa Admin. Code § 281–102.2. *See also id.* at 102.3.

**7.** In their brief in resistance to motion for summary judgment, plaintiffs reference "Ex. A" as the policies of the District, however, "Ex. A" is not attached nor found anywhere in the file.

**8.** *Burkhart* involved a bus driver who had allegedly assaulted a deaf patron.

assault of his stepdaughter, which school officials did not know about because no background check was conducted. *Id.* at 1451–52. The student and her parents sued the school district for, among other things, negligent screening and supervision of the driver. *Id.* at 1556.

Under Nebraska law the discretionary-function exemption extended only "to the basic policy decisions and not to ministerial acts arising therefrom." *Id.* (quoting *Koepf v. County of York,* 198 Neb. 67, 251 N.W.2d 866, 870 (1977)). The Eighth Circuit affirmed the district court's determination that the exemption immunized the school district from liability.

> We agree with the district court's assessment that decisions to "investigate, hire, fire and retain" employees are generally discretionary. Thus, these decisions fall within the discretionary function exemption and cannot be the basis for liability on the part of the school district.

Id. at 1457.

In view of the "great weight" given by the Iowa Supreme Court to federal case law in this area, *Goodman,* 587 N.W.2d at 236, it is likely the Iowa Supreme Court would follow the lead of the Eighth Circuit in *Tonelli* and *Larson,* and the other federal case authority above, to conclude that the hiring, retention and supervision of public employees, and specifically employees of school districts, is sufficiently connected to considerations of public policy to fall within the discretionary function exception of Iowa Code § 670.4(3).[9]

As the District points out, several other state and federal courts in similar circumstances have found that the hiring, retention, training and supervision of public employees involves discretionary, policy-related decisions for which a public entity is immune from liability under applicable state law. *See Davis v. DeKalb Cty. Sch. Dist.,* 996 F.Supp. 1478, 1484 (N.D.Ga. 1998); *Does 1, 2, 3 and 4 v. Covington Cty. Sch. Bd.,* 969 F.Supp. 1264, 1285–87 (M.D.Ala.1997); *C.B. v. Bobo,* 659 So.2d 98, 101 (Ala.1995); *Willoughby v. Lehrbass,* 150 Mich.App. 319, 388 N.W.2d 688, 700–01 (1986); *Doe v. Park Center High School,* 592 N.W.2d 131, 135–36 (Minn. App.1999); *Oslin v. State,* 543 N.W.2d 408, 415–16 (Minn.App.1996); *Kimpton v. Sch. Dist. of New Lisbon,* 138 Wis.2d 226, 234–36, 405 N.W.2d 740, 744–45 (Wis.App. 1987). *See generally* 57 Am.Jur.2d *Municipal Tort Liability* § 534. The Court's attention has not been directed to any persuasive authority from another jurisdiction holding otherwise.[10]

**9.** The Iowa Supreme Court has not decided the issue. In an unpublished opinion the Iowa Court of Appeals held, in a case involving a sexual assault by a police officer who, it had been rumored, had previously sexually abused a child, that the investigation of the previous episode, as well as the retention and supervision of the officer were discretionary-functions within the meaning of Iowa Code § 670.4(3). *Joyce v. City of Creston,* No. 9–037/98–0881, Ruling at 17–20 (Iowa App. May 26, 1999). The Court applied the two-step analysis called for in *Goodman* and *Berkovitz* and cited *Burkhart* and *Tonelli* approvingly. Because the opinion was unpublished, it may not be cited as authority, Iowa R.App. P. 14(e), but the ruling is useful in predicting how the Iowa Supreme Court would resolve the issue. Moreover, the analysis reflected in the opinion is persuasive.

It is worth noting here that a panel of the Eighth Circuit has just held that its counterpart to Iowa R.App. P. 14(e), Eighth Circuit Rule 28A(i) which states that unpublished opinions are "not precedent and parties generally should not cite them," is unconstitutional under Article III of the federal Constitution "because it purports to confer on the federal courts a power that goes beyond the 'judicial.'" *Anastasoff v. United States,* 223 F.3d 898, 899 (8th Cir.2000). The problem is that such a rule "expands the judicial power beyond the limits set by Article III by allowing [the court] complete discretion to determine which judicial decisions will bind us and which will not." *Id.* at 905.

**10.** There are some cases which have reached a different result for reasons that distinguish them from the present. In *S.B.L. v. Evans,* 80 F.3d 307 (8th Cir.1996), the court found that defendant, a principal and school superintendent, was not immune from liability for the sexual assault of two students by a teacher he supervised because Missouri case law held that principals and superintendents were not immune from suit for their negligent acts and

Plaintiffs argue that while the *Tonelli* court observed generally that employee supervision and retention falls within the discretionary function exception, it did not apply the exception in that case because there was a factual dispute about whether the federal employer "failed to act when it had notice of illegal behavior." 60 F.3d at 496. "Failure to act after notice of illegal action does not represent a choice based on plausible policy considerations." *Id.* Plaintiffs argue this case is in the same posture.

As noted previously, the District, in the person of school principal Farmer, did act when it received notice of alleged inappropriate behavior by Skinner. Each incident was investigated and Skinner was instructed on his dealings with students following the September 1995 report. Though the District's response distinguishes *Tonelli* in this regard, it serves to illustrate the policy implications involved when a school official is confronted with allegations like those made against Skinner. It is difficult to imagine a more sensitive situation. The allegations have to be investigated and a decision made about them. In doing so in this case Farmer had to be mindful of the strong public policy to protect children from child abuse and his duty as principal for the care and safety of children placed in his charge for educational purposes. He also had to be careful to respond in a manner which would not deter the students involved, their parents, or others from reporting future incidents of suspected child abuse. At the same time, fairness to Skinner dictated that any adverse action be supported by credible evidence. The privacy and personal interests of both the students and Skinner had to be borne in mind for disclosure beyond what was necessary or an ill-considered reaction risked harm to the reputation and emotional well being of both accuser and accused. The balancing of all of these concerns, and the judgments which resulted from them, are grounded in policy as a review of the statutes and regulations discussed *supra* at 21–23 indicates. *See also* Iowa Code § 232.67 (legislative findings concerning child abuse). For example, by regulation an investigator of alleged abuse of a student by a school employee is to base his or her determination on the preponderance of the evidence, maintain the confidentiality of the report of abuse to the extent possible, and "exercise prudent discretion in the investigative process to preserve the privacy interest of the individuals involved."

---

omissions. *Id.* at 310. Under the Missouri official immunity doctrine only "public officers" acting within the scope of their authority were immune from liability for discretionary actions. *Bolon v. Rolla Public Schools,* 917 F.Supp. 1423, 1431 (E.D.Mo.1996) (quoting *Kanagawa v. State,* 685 S.W.2d 831, 835 (Mo.1985) (en banc)). Principals and school superintendents did not qualify as "public officials." *S.B.L.,* 80 F.3d at 310; *Bolon,* 917 F.Supp. at 1431–32. In *Bolon,* the district court held a school board member was a "public official" under Missouri law, and that a claim of, in essence, negligent hiring and supervision against the board member was precluded by the official immunity doctrine because the conduct involved "discretionary" acts. *Bolon,* 917 F.Supp. at 1432.

In *Doe v. Estes,* 926 F.Supp. 979 (D.Nev. 1996), the court appeared to apply the planning/operational dichotomy derived from *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), and modified, if not rejected, by the United States Supreme Court in *Berkovitz* and *Gaubert, supra* at 20–21, 73 S.Ct. 956, and by the Iowa Supreme Court in *Goodman,* 587 N.W.2d at 237–38. Applying a different analytical framework, the *Doe* court held that hiring was a discretionary function, but that retention and supervision were "operational" functions which were not exempt from liability under the relevant Nevada immunity statute.

Finally, the Kansas Supreme Court in *Kansas State Bank & Trust Co. v. Specialized Transp. Services,* 249 Kan. 348, 819 P.2d 587 (1991), denied immunity to a school district under a statutory discretionary function exception like Iowa's because the district's employees had failed to follow a mandatory reporting procedure which might have alerted a student's parent to a school bus driver's sexual molestation of her daughter. *Id.* 249 Kan. at 368, 819 P.2d at 601–02. The first prong of the discretionary function test was not satisfied.

Iowa Admin. Code §§ 281–102.8(4), (5), .9(3),(4). Investigation of complaints like those lodged against Skinner prior to the incident with Ginny and the decision about what, if any, action should be taken in response to them are "necessarily beset with policy-making considerations." *Oslin,* 543 N.W.2d at 416; *see Doe* 592 N.W.2d at 136.

Plaintiffs' claim against defendant for negligent hiring, retention and supervision is a claim based upon the exercise, or failure to exercise or perform a discretionary function and, accordingly, the defendant District is exempted from liability by Iowa Code § 670.4(3).

## IV.

Defendant Ottumwa Community School District's Motion for Summary Judgment will be granted as to all of plaintiffs' claims against the District. However, no judgment will be entered at this time. Default proceedings concerning the claims against Defendant Skinner are pending. The Court will defer entry of judgment on the claims against the District until the bifurcated proceedings involving Skinner are completed. The final pretrial conference and trial of the claims against the District now set for September 8, 2000 and September 25, 2000 respectively are canceled.

IT IS SO ORDERED.