208 F.3d 736 (9th Cir. 2000)
 MONICA REESE, JANEL REESE, CASSI HARR, and CORINA PRUETT,Plaintiffs-Appellants, v.
JEFFERSON SCHOOL DISTRICT NO. 14J; and in their official and individual capacities, JAMES MOSKAL, Superintendent; ROBERT TOWER, Principal; DAVID BEYERL, Vice Principal; STEVE WEDDLE, Director; JEFF GILMOUR, Director; WILLIAM LINHART, Director; GALE CARPENTER, Director; and GAIL CASE, Director, OPINION Defendants-Appellees.
 No. 99-35543
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Submitted March 7, 2000[1]
Decided March 29, 2000
 
 COUNSEL: Paul B. Meadowbrook, Salem, Oregon, for the plaintiffsappellants.
 Lisa E. Lear, Bullivant Houser Bailey, Portland, Oregon, for the defendants-appellees.
 Appeal from the United States District Court for the District of Oregon; Malcolm J. Marsh, District Judge, Presiding. D.C. No. CV-97-1673-MJM
 Before: Alfred T. Goodwin, Susan P. Graber, and Raymond C. Fisher, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Plaintiffs, four female former high school students, appeal the summary judgment in favor of the school district and several named school district officials in an action for damages under Title IX and 42 U.S.C. S 1983. We affirm the judgment because: (1) the school district did not subject the plaintiffs to harassment by acting with deliberate indifference to harassment of which it had actual knowledge; and (2) the record does not support the claim that the school district punished the plaintiffs with discriminatory intent in violation of their right to equal protection of the law.
 
 BACKGROUND
 
 2
 On Tuesday, May 27, 1997, four days after the last day of classes for seniors, Jefferson High School sponsored "senior skip day" and transported members of the senior class to a local state park. While at the park, the plaintiffs hid in the stalls of the boys' bathroom. When a group of senior boys came into the bathroom to change clothes, the plaintiffs ran out of the stalls and allegedly threw water balloons at the boys.
 
 
 3
 Prior to skip day, school authorities had warned that students who behaved inappropriately on the trip would jeopardize their participation in commencement exercises scheduled for Friday, May 30. After receiving several complaints and after interviewing several students, vice-principal David Beyerl suspended the plaintiffs on May 28.
 
 
 4
 On the morning of May 30, the school board held a special meeting, at which the plaintiffs were joined by parents and counsel. The plaintiffs admitted hiding in the boys' bathroom, but argued that they were merely retaliating for several acts of harassment committed by the boys during the school year. Prior to May 28, the plaintiffs had never reported any harassment, and the record offers no evidence that the school district actually knew prior to May 28 of the boys' alleged harassment of the girls. The boys did not admit to any misconduct, and the school district conducted no further investigation. The school board concluded the special meeting by upholding the suspension of the girls and, thus, although the plaintiffs graduated and received diplomas, they were barred from the commencement ceremony.
 
 
 5
 The plaintiffs filed their claims under Title IX and 42 U.S.C. S 1983, alleging that the school district was liable for the harassment allegedly committed by the boys during the year, and for excluding the plaintiffs from commencement. The magistrate judge prepared findings and recommendations upon which the district court based its judgment. The magistrate judge noted that the plaintiffs had raised no genuine issue of material fact. Reviewing de novo, the district court entered summary judgment in the defendants' favor.
 
 STANDARD OF REVIEW
 
 6
 On appeal from summary judgment, this court reviews de novo. See Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1993). To rebut the motion for summary judgment successfully, the plaintiffs must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiffs' favor, could convince a reasonable jury to find for the plaintiffs. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
 
 DISCUSSION
 I. STUDENT-STUDENT HARASSMENT
 A. Title IX Claims Under Davis and Gebser
 
 7
 Title IX provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 20 U.S.C. S 1681(a) (1994). The parties agree that the Board is a recipient of federal education funds for Title IX purposes.
 
 
 8
 The Supreme Court recently addressed student-student harassment claims under Title IX in Davis v. Monroe County Board of Education, 119 S. Ct. 1661 (1999). This appeal presents our first application of Davis to a student-student harassment case. Aurelia Davis was a fifth grader who allegedly suffered numerous instances of sexual harassment at the hands of a single student, G.F., who ultimately pleaded guilty to criminal sexual misconduct. See Davis, 119 S. Ct. at 1676. The Court held that a school district "may be liable in damages under Title IX only for its own misconduct, " i.e., when it "subjects its students to harassment." Id. at 1670, 1672. Under that narrow standard, the Court held that plaintiff Davis nonetheless successfully stated a claim for Fed. R. Civ. P. 12(b)(6) purposes, because Davis alleged that teachers and the principal had subjected Davis to harassment by failing to respond to numerous complaints.
 
 
 9
 In establishing the requisites for liability, the Davis Court relied on its recent opinion in Gebser v. Lago Vista Indep. School Dist., 524 U.S. 274 (1998), in which the Court held that a school district was not liable for teacher-student sexual harassment unless it (1) had actual knowledge of the harassment, and (2) responded to that knowledge with deliberate indifference. In Gebser, the Court rejected the use of agency principles to impute liability for the misconduct of teachers, and declined to impose direct liability under what amounted to a negligence standard. See Davis, 119 S. Ct. at 1671 (interpreting Gebser). In so doing, the Court made clear that Title IX liability is not parallel to Title VII liability. See Gebser, 524 U.S. at 284-86; Davis, 119 S. Ct. at 1671.
 
 
 10
 With Gebser as its guide, the Davis Court set forth four requirements for the imposition of school district liability under Title IX for student-student harassment. First, a school district's liability is limited "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." Id. at 1672.
 
 
 11
 Second, a school district can be held liable in damages only where the plaintiff suffers "sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 1675. Explaining this requirement, the Davis Court directed that "[c]ourts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable for adults." Id. Accordingly, "[d]amages are not available for simple acts of teasing and name-calling among school children . . . even where these comments target differences in gender." Id .
 
 
 12
 Third, a school district is liable in damages only where it has "actual knowledge" of the harassment. Davis, 119 S.Ct. at 1675. In Gebser, the Court explained the actual knowledge requirement and announced that damages may not be recovered unless an official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination." Gebser, 524 U.S. at 290.
 
 
 13
 Fourth, "[i]f a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." Davis, 119 S. Ct. at 1672 (internal quotation marks and citations omitted). The Court explained that "deliberate indifference" occurs "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Id. at 1674.
 
 B. Applying the Law to the Instant Case
 
 14
 We hold that Jefferson School District is not liable for the alleged antecedent harassment of female students by male students. The school district was "not deliberately indifferent to sexual harassment of which [it had] actual knowledge" in such a way as to "cause the plaintiffs to undergo harassment or make them liable or vulnerable to it." Id. at 1675, 1672.
 
 
 15
 The plaintiffs concede that they did not report their harassment to anyone in authority until May 28, 1997 -after the plaintiffs were themselves threatened with disciplinary action. By that time, the school year had ended. There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under Davis, the school district cannot be deemed to have "subjected" the plaintiffs to the harassment. Cf. Burtner v. Hiram College, 9 F. Supp.2d 852, 857 (N.D. Ohio 1998) (holding that school was not deliberately indifferent by failing to act on report of harassment filed two days before graduation).
 
 
 16
 Moreover, the district court did not err in concluding that evidence of an alleged threat by one female student to one of the plaintiffs, which was purportedly witnessed by a teacher, did not raise an issue of material fact. This incident did not put the school district on actual notice that worse and ongoing alleged harassment was being committed by the male students, or that the plaintiffs were being harassed so severely as to be deprived of educational benefits. Cf. Gebser, 524 U.S. at 279 (holding that school district's actual knowledge of inappropriate teacher comments did not put school district on actual notice that teacher had sexual relations with student).
 
 
 17
 II. SECTION 1983 CLAIMS OF DISPARATE PUNISHMENT
 
 
 18
 With respect to the plaintiffs'S 1983 claims, we hold that the school district did not violate the Equal Protection Clause of the Fourteenth Amendment by punishing the female plaintiffs without punishing the male students accused by the plaintiffs. To succeed on a S 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional. See Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991). The plaintiffs' case fails this test.
 
 
 19
 The record does not support a charge that the school district acted with an impermissible motive, even if its disciplinary action against the plaintiffs can be viewed as harsh. There is no direct evidence of gender animus, nor is there even evidence of system-wide disparate impact in punishments between genders. The plaintiffs concede that the school district has enacted anti-harassment policies and has a record of enforcing those policies when violations are reported in a timely manner. Rather, the plaintiffs rely almost entirely on the fact that in this one case the girls who were caught "in the act" of inappropriate behavior were punished, while the accused boys, whose behavior had not been previously reported, were not punished.
 
 
 20
 Important differences between the boys' and girls' situations rebut any inference of gender animus. The school district had timely notice of the plaintiff's infraction, and no notice of alleged misconduct by the boys. This difference in notice supports the conclusion that the differences in discipline were not unconstitutionally discriminatory. Moreover, there is no claim that the boys entered the girls' bathroom, thereby violating the specific directive to behave properly on the senior trip. Uncontroverted evidence established a factual basis for the discipline of the plaintiffs. Accordingly, the district court correctly disposed of the S 1983 claim.
 
 CONCLUSION
 
 21
 Because we hold that the plaintiffs fail to make a triable case of Title IX or S 1983 injury, we need not address whether Title IX claims can be brought against individual officials, or whether those officials are protected by qualified immunity from the plaintiffs' S 1983 claim. In this case, there was no error in granting summary judgment.
 
 
 22
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).